ST. PAUL FIRE AND MARINE
INSURANCE COMPANY and
U.S. Roofing, Inc., Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 458–89C, 475–89C.

United States Claims Court.

Nov. 21, 1991.

Ronald E. Martell, St. Paul, Minn., atty. of record, for plaintiff St. Paul Fire and Marine Ins. Co.

William L. Bruckner, San Diego, Cal., atty. of record, for plaintiff U.S. Roofing, Inc.

Odessa P. Jackson, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

REGINALD W. GIBSON, Judge.

This contract case is before the court on defendant's motion to stay proceedings pending the termination of an on-going criminal investigation into the activities of plaintiff U.S. Roofing, Inc. (U.S. Roofing), involving matters raised in plaintiff's complaint. For the reasons discussed herein-

after, we find that the United States is entitled to a stay.

On September 1, 1989, U.S. Roofing filed its complaint in this court seeking to collect approximately $5.5 million for the defendant's alleged wrongful termination of Contract No. DACA05–87–C–0198, as well as for alleged differing site conditions and government-caused delays. Just prior to U.S. Roofing's filing of its complaint, co-plaintiff, St. Paul Fire and Marine Insurance Company (St. Paul), as surety for the performance of the contract between U.S. Roofing and the Department of the Army, filed its complaint on August 24, 1989, challenging the propriety of the default termination and seeking to recover the excess costs it incurred in taking over and completing the contract work. In both cases, defendant filed an answer admitting or denying the allegations set forth in the plaintiffs' pleadings; the defendant, however, did not raise any issues of its own, nor did it file a counterclaim.

On June 27, 1991, the Army Criminal Investigation Division (CID) issued subpoenas to U.S. Roofing, its principals, and others for the production of certain documents relating to contract DACA05–87–C–0198. At this time, U.S. Roofing and/or its principals are currently under investigation by the CID for criminal fraud in relation to said contract. As a result of this criminal investigation, defendant filed a motion, on July 24, 1991, requesting that this court stay its civil proceedings, pending an on-going criminal investigation of U.S. Roofing, and the matters raised in its complaint, "until such time as criminal prosecution is either completed or declined." Specifically, defendant indicates in its motion that U.S. Roofing's claim to the contracting officer contains questionable and duplicated costs on a number of items in apparent violation of 18 U.S.C. §§ 287 and 1001. In addition, the defendant avers that the criminal investigation relates specifically to U.S. Roofing's claims under the contract which is presently subject to civil litigation before

this court. Defendant further maintains that the investigation involves the same facts and witnesses that are at issue in this case; that is, the facts in this action track those which led to the criminal investigation. Finally, defendant contends that a motion to stay proceedings should be granted because, pursuant to 28 U.S.C. § 2514[1] and the doctrine of equitable estoppel, the plaintiff, if found guilty of any criminal or civil fraud in connection with this matter, would forfeit its right to pursue its claim under the subject contract. Accompanying defendant's motion for stay is an affidavit from the Assistant United States Attorney for the Eastern District of California, averring that the U.S. Attorney's Office has initiated a criminal investigation of U.S. Roofing in connection with Contract No. DACA05–87–C–0198, that the investigation should take approximately six months to complete, and only at that time will the Office determine whether criminal prosecution is warranted. No comment is made therein as to whether a grand jury has been impanelled or whether a grand jury investigation has been initiated.

On July 25, 1991, one day after defendant filed its motion to stay, this court held a status conference and oral argument on defendant's motion to enable the court to better determine the extent of the issues in dispute. Thereafter, the court ordered the defendant to file its motion for summary judgment *in camera*, and to simultaneously file an affidavit from the United States Attorney stating whether or not the formal filing of the motion for summary judgment and the serving of the plaintiffs will imperil the pending criminal investigation. The defendant, in turn, filed a status report explicating its non-compliance with the July 25 order, but did submit a declaration of Donald Searles, Assistant United States Attorney, stating that "at the present time, the United States is unable to state, with certainty, whether the civil proceedings in this

---

1. 28 U.S.C. § 2514 states as follows: "Forfeiture of fraudulent claims. A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof."

matter will have an effect on the criminal investigation."

Both, St. Paul and U.S. Roofing, thereafter filed a Plaintiff's Opposition to Defendant's Motion to Stay Proceedings on August 9 and 13, 1991, respectively, in which they contend, *inter alia*, that defendant has failed to sustain its burden to demonstrate, at least at this posture, the need for a stay, because it has failed to show that the facts and issues in the civil litigation are "substantially similar" to those in the criminal investigation. Moreover, plaintiffs argue that the defendant has not made a clear showing of hardship or inequity in being required to go forward with the civil proceedings pending the on-going criminal investigation. Plaintiffs support these contentions by referring to the fact that the civil discovery period ended on January 19, 1991. Plaintiffs further contend that defendant's reliance on Rule 6 of the Federal Rules of Criminal Procedure, implying that counsel cannot disclose the nature of the conflicts at hand, is unjustified, in that there has been no grand jury proceeding nor an initiation of one, as required by the rule. In addition, plaintiffs argue that the requested duration of defendants motion to stay is immoderate and unreasonable, despite Mr. Searles declaration that the criminal investigation may be completed in approximately six months, because the defendant has not met its burden of proving hardship and inequity. Finally, plaintiffs contend that they would be severely prejudiced by the continued delay of the civil litigation due to the increased costs of litigation, the diminishment of witness recollection, the loss or destruction of documents, and, conceivably, the death of key witness.

*Discussion*

■ The power of this court to stay proceedings has long been acknowledged by the Supreme Court as "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). The manner in which this may be done calls for the exercise of judgment in weighing competing interests and maintaining an even balance. *Id.* "It is axiomatic, therefore, that an application for a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else.'" *C3, Inc. v. United States*, 4 Cl.Ct. 790, 791 (1984) (*citing Landis*, 299 U.S. at 255, 57 S.Ct. at 166). However, no general rule has been prescribed to delineate the criteria for determining when a civil case will, *ipso facto*, impermissibly interfere with an on-going criminal proceeding. Accordingly, such determination must be made on a case-by-case basis. *C3, Inc.*, 4 Cl.Ct. at 791.

■ In light of the above principles, this court has found that, in general, the movant must overcome three hurdles when seeking to obtain a motion to stay proceedings. They are as follows:

(1) the movant must make a clear showing, by direct or indirect proof, that the issues in the civil action are "related" as well as "substantially similar" to the issues in the criminal investigation;

(2) the movant must make a clear showing of hardship or inequity if required to go forward with the civil case while the criminal investigation is pending; and

(3) the movant must establish that the duration of the requested stay is not immoderate or unreasonable.

*See C3, Inc. v. United States*, 5 Cl.Ct 659, 660 (1984).

*Hurdle #1—Substantially Similar or Related Issues:*

Defendant, relying on its secrecy obligations under Rule 6, cannot directly prove that the matters under criminal investigation are "substantially similar" or "related" to the issues in this case; however, defendant indicates that it has indirectly done so by postulating that not only do the facts relied on by the United States in the civil action *track* those which led to the criminal investigation, but also that the

money which U.S. Roofing is seeking to collect in this court is primarily the focus of the criminal investigation. The defendant also points out that the affidavit of the Assistant United States Attorney states that the criminal investigation of the "questionable and duplicative costs" is based on the same contract at issue in this case. In support of this contention, defendant avers that:

(i) the facts relied on by the United States in the civil action *track* those which led to the criminal investigation in that the facts which serve as a basis of the criminal investigation surfaced from the Army's investigation into U.S. Roofing's course of conduct in submitting its "claim" for damages in connection with the defaulted contract;

(ii) the contract payments sought in the Claims Court are the primary focus of the criminal investigation; and

(iii) the affidavit of the Assistant United States Attorney states that the criminal investigation of U.S. Roofing is "in connection with U.S. Army Construction Contract No. DACA05–87–C–0198."

■ Foregoing the issue of whether the defendant has properly utilized the benefits of Rule 6, we have previously stated in *C3, Inc.* that "the resolution of Issue [Hurdle] # 1 requires no extensive comparative factual analysis by this court in order to conclude that the issues in the civil action are 'related' as well as 'substantially similar' to those in the criminal investigation." *C3,* 5 Cl.Ct. at 661. Moreover, defendant may satisfy its burden to make a *prima facie* showing of the ultimate fact, circumstantially; defendant need not "contemplate an *in haec verba* iron-clad comparison of separate issues by direct proof." *Id.* Therefore, based on a critical reading of plaintiffs' complaints, the pleadings in support and against defendant's motion to stay, and the affidavit of the Assistant United States Attorney, it is clear to this court that not only are the facts set forth in the civil litigation and those of the criminal investigation related, but they are also "substantially similar." However, we do point out that a stronger case in support of a motion

to stay under these operative facts may be had where defendant has filed a counterclaim in fraud, and more particularly, where that counterclaim sets forth issue(s) which mirror those under investigation. *See id.* Nevertheless, the court also emphasizes the fact that motions to stay proceedings are determined on a case-by-case basis, and accordingly, this court may rule as it deems appropriate in light of the pleadings before it. *C3, Inc.,* 4 Cl.Ct. at 791. Thus, because the defendant has successfully proven that the issues under investigation and those in this litigation are not only "related," but also "substantially similar," the court finds that hurdle # 1 has been overcome.

*Hurdle # 2—Clear Hardship on the Defendant:*

■ In instances where it is patently clear that the issues in both proceedings are "related" as well as "substantially similar," it is equally apparent that there will be a substantial, if not a total, overlap of witnesses and documentary evidence. *Id.* In addition, where a stay is not obtained in a civil proceeding pending the completion of a criminal trial (or investigation), the primary hardship to the litigants will generally arise from the considerably narrower scope of discovery allowed in the criminal case. *Campbell v. Eastland,* 307 F.2d 478, 487 (5th Cir.1962). Concomitantly, the reason why courts attempt to avoid concurrent civil and criminal suits is that "the broader discovery permissible in civil cases should not be used to compromise parallel criminal proceedings" (*Litton v. United States,* 215 Ct.Cl. 1056, 1058 (1978)), particularly, in the instance where the parallel criminal investigation may be said to "churn over the same evidentiary material." *See Peden v. United States,* 512 F.2d 1099, 206 Ct.Cl. 329, 339 (1975). Accordingly, "where such a compromising situation is considered likely, the public's interest in law enforcement surfaces and mandates that criminal proceedings be given priority over the concurrent civil proceedings." *C3,* 4 Cl.Ct at 791. *See Peden,* 206 Ct.Cl. at 338–339. However, it is important to note that the Su-

preme Court places the heavy burden of establishing entitlement to a stay on the movant to show a *clear* case of hardship on being required to go forward. *Landis*, 299 U.S. at 255, 57 S.Ct. at 166.

Given these well-founded principles, we find that the defendant has met its heavy burden because it has sufficiently established that the facts and issues are not only "related," but also "substantially similar." Despite the fact that general discovery ended on January 19, 1991, it is still likely that the defendant will suffer *clear* hardship or inequity as a result of simultaneously conducting both civil and criminal proceedings since the facts show that all facets of discovery have not been completed, in that there remains two critical outstanding discovery requests pending between the parties at this time.

More specifically, according to the facts before the court, plaintiff U.S. Roofing filed a motion to compel discovery on August 6, 1991 (after defendant's motion to stay proceedings had been filed on July 24, 1991). Plaintiff therein alleged that under the discovery rules it is entitled to, although it has not yet received, the two audit reports completed by the government auditor, Mr. Chris Knutsen, earlier this year. The basis for U.S. Roofing's contention is premised upon the fact that the government may later call Mr. Knutsen as a witness at trial. During a telephonic status conference held on November 14, 1991, however, plaintiff, in agreement with this court, withdrew its motion to compel because the motion was premature in light of the fact that defendant has not affirmatively stated that it will call Mr. Knutsen as an expert witness at trial. Nevertheless, plaintiff did argue that if and when the government determines that it will call Mr. Knutsen, plaintiff will reconsider refiling its motion to compel discovery. Accordingly, for the reasons stated above, we find that defendant has made a sufficient showing of *clear* hardship or inequity, and has thereby overcome hurdle # 2.

*Hurdle # 3—Duration of Requested Stay:*

In its motion for stay, defendant requests a stay "until such time as criminal prosecution is either completed or declined." Specifically, defendant requests a stay "pending termination of the criminal investigation and/or any grand jury proceedings; and, if an indictment is returned, until the conclusion of the criminal trial." Defendant estimates that the current criminal investigation, to determine if defendant will prosecute U.S. Roofing, should require approximately six months to complete, from which time defendant proposes to request an extension of the stay if an indictment is returned and the case proceeds to trial. Defendant contends that this request is moderate and reasonable, while plaintiff contends otherwise.

■ To the extent that the facts of the case warrant such a request, a stay of civil proceedings may be granted by a court so long as that discretion is not abused and the stay is "kept within the bounds of moderation." *Landis*, 299 U.S. at 256, 57 S.Ct. at 167. We agree, therefore, on the authority of our predecessor court, that the interests of justice require our continued application of the "practice to 'freeze' civil proceedings when criminal prosecution involving the same facts is warming up or *under way* [so as to obviate] improper interference with [on-going] criminal proceedings." *C3, Inc.*, 5 Cl.Ct. at 661 (*citing Peden*, 206 Ct.Cl. at 339, and *Litton Systems, Inc.*, 215 Ct.Cl. at 1057–1058). This court also agrees with defendant that the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, will of necessity expedite a criminal trial, if appropriate. *See C3, Inc.*, 5 Cl.Ct. at 661–662. Accordingly, we find defendant's request for a stay of proceedings for "six to nine months" to be reasonable and moderate. Therefore, the court will stay its proceedings until the earlier of the completion of the criminal investigation and/or trial or until its ruling on defendant's motion to dismiss.[2]

---

**2.** On July 25, 1990, defendant filed a motion to dismiss St. Paul's complaint for lack of subject matter jurisdiction. By order of March 4, 1991,

this court stayed a ruling on defendant's motion to dismiss until such time as defendant filed its motion for summary judgment. The court is

*Conclusion*

It is settled that "[t]he constitution does not require a civil action to be stayed until criminal proceedings are no longer possible." *Favaloro v. S/S Golden Gate*, 687 F.Supp. 475, 481 (N.D.Cal.1987). Rather, the decision to stay the civil action lies within the sound discretion of the court. *Landis*, 299 U.S. at 255–256, 57 S.Ct. at 166. In such circumstance, the court makes its determination, regarding the stay, based on the facts of each case and seeks to balance the unfairness to each party. *Favaloro*, 687 F.Supp. at 482. Because, on the facts at bar, we are reluctant to require the government to proceed with this civil litigation when a related criminal investigation/proceeding is still in progress, *see Litton Systems, Inc.*, 215 Ct. Cl. at 1057–1058, and *Peden*, 206 Ct.Cl. at 338–339, defendant's motion to stay the civil proceedings is hereby GRANTED until the earlier of the resolution of the criminal investigation/trial or this court's ruling on defendant's motion to dismiss.

IT IS SO ORDERED.

currently advised that the defendant does not intend to file a motion for summary judgment. In addition, by order of June 28, 1991, the defendant filed a supplemental motion to dismiss on July 31, 1991.